**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

ART ESQUIBEL, CAMERA AND DARKROOM, LINDA AND HENRY SANDOVAL, PERFORMANCE TIRE, ROBERT CHAPMAN, SANTA FE HARDWARE MARGARET DURAN, STREET FEET SHOES, MARISSA MOYA, DANNY'S CLEANERS, KENNEDY SAEZ, LAUNDRAMUTT, DELFINA CHAVEZ, DELFINA'S BEAUTY SALON, LAWRENCE ROMERO, NEW METHOD CLEANERS, ART PEDLEY, ACE MOUNTAIN WEAR & BIKES, LOUIE QUINTANA, QUINTANA OPTICAL, BRUNO CARILLO, SANTA FE GLASS AND MIRROR, GABRIEL A. GARCIA, THE AUTO ANGEL INC., JILL HEPPENHEIMER AND BARBARA LANNING, SANTA FE WEAVING GALLERY, KEN LUCKIE, AMIGO TIRE, DARBY McQUADE, JACKALOPE, DAN McCARTY, SANTA FE MOUNTAIN SPORTS, KEVIN QUINN, QUINN TIRE, LARRY KELLER, DESIGN WAREHOUSE, KENT LITTLE, SANGRE DE CRISTO MOUNTAIN WORKS, JOEY GONZALES, STEWART UDALL, and MAX AND CATHERINE COLL,

     Petitioners-Appellants,

v.                                        NO.  27,548

**CITY OF SANTA FE, HERRERA AND ASSOCIATES, STEVE JOHNSON DEVELOPMENT, LLC, FRONTERA DEVELOPMENT, INC., as agents for the real parties in interest for the Entrada Contenta Development Plan,**

Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Freddie J. Romero, District Judge**

Patrick A. Casey
Santa Fe, NM

Anthony Lopez
Taos, NM

William E. Snead
Albuquerque, NM

Stephen Durkovich
Santa Fe, NM

for Appellants

Long, Pound & Komer P.A.
Nancy R. Long
Santa Fe, NM

for Appellee Herrera & Associates

Michelle Henrie, LLC
Michelle Henrie
Albuquerque, NM

Atkinson & Thal, P.C.
Clifford A. Atkinson
Albuquerque, NM

for Appellee Frontera Development, Inc.

City of Santa Fe
Frank Katz
Maureen Reed
Santa Fe, NM

for Appellee City of Santa Fe

# MEMORANDUM OPINION

**ROBLES, Judge.**

In this case, Petitioners allege that the Santa Fe City Council (Council) improperly limited its scope of review in considering a new commercial development—Entrada Contenta—proposed for the south side of Santa Fe. The district court upheld the Council's approval of the development, which would be comprised of seventeen businesses, including a new Wal-Mart Superstore. Petitioners are small business owners and others who oppose the development. Respondents are the City of Santa Fe (City) and landowners and developers who favor the

development. The case is before this Court on petition for certiorari pursuant to Rule 1-074 NMRA.

Petitioners primarily argue that the district court, in reviewing the Council's action, should not have stricken affidavits of three City councilors. The affidavits stated that, at the time of the hearing on Entrada Contenta, the councilors believed the scope of their review was limited to whether the project complied with the land development code, and that they could not consider such additional factors as the economic effect of the development on existing businesses. Petitioners also allege that an instruction by the City attorney to the Council limited the Council's scope of review, thus rendering approval of the development arbitrary and capricious. Finally, Petitioners argue that the public was not given notice of what the scope of the Council's review would be, and this resulted in a violation of their due process rights. We address each issue in turn and affirm the district court.

I. BACKGROUND

In 1994, Ordinance No. 14-1994 was passed by the City in connection with the rezoning of the relevant property from R-1 residential to C-2 commercial use. The provision states in Part 4 of the Ordinance that "prior to submittal for a building permit, the applicant shall submit a development plan for review and approval by the Development Review Committee. Such review shall be made only to determine

compliance with the Land Development Code and shall not include changes of usage, density, or developable area." Immediately after the above provision, Part 5 of the Ordinance states that "[p]rior to submittal for a building permit, the applicant shall submit a development plan for review and approval by the City Council." Petitioners contend, and the district court agreed, Part 4 of the Ordinance's limited review applied only to the Development Review Committee, and that there was no such limitation on the full Council's review addressed in Part 5 of the Ordinance.

The public hearing on Entrada Contenta was held on August 15, 2005 at the Santa Fe High School gym in order to accommodate the crowd and lasted from 7:00 p.m. until 4:30 a.m. Numerous persons spoke against and in favor of the development and addressed many issues beyond whether the development complied with the land development code. In general, the public comments addressed the reputation of Wal-Mart, the adverse economic effects on existing small businesses, and the need for jobs and low-priced shopping in the area.

The extent to which Petitioners were organized at the time of the 2005 public hearing is somewhat unclear. One of their present attorneys testified and was identified in the minutes as "attorney for the Small Business Alliance." At least four of the present Petitioners testified.

5

The City attorney's statements that set forth the purported limitation on the scope of the Council's review do not appear in the public hearing record. Two pro-development attorneys—one representing Herrera and Associates and the other representing Frontera Development—referred to this purported limitation in their remarks at the Council's public hearing. Herrera's attorney noted in her statement before the public comments began that the Council was acting in a quasi-judicial capacity, not a legislative capacity, and that the Council was to consider whether the development complied with the criteria that were in place. She stated that "[t]he Code does not allow you, nor should it, discretion to regulate business competition by the approval or denial of development plans. To do so would be to read criteria and standards into the Code that do not exist." She also referred to an earlier project in which the Council had agreed not to consider the potential adverse economic impact of a proposed boutique hospital. The hearing minutes indicate that Frontera's attorney "reminded the Council that Mayor Delgado earlier . . . asked the City [a]ttorney if this [was] a land use case, and the City [a]ttorney responded yes. He then stated '[t]hat means you can't consider the alleged negative economic impact on other businesses.'"

Councilor Ortiz noted that an attorney for the development had instructed the Council as follows:

6

> [T]his is a land use issue only and that the Council is not supposed to make any decision based on business comparisons or economics, but the Wal-Mart side is saying to the Council that "it makes good policy sense to have businesses and services located in a particular place."

On the morning of August 16, 2005, the Council approved the development by a 5-4 vote after the mayor broke a 4-4 tie among the councilors.

In the appeal to the district court, Respondents moved to strike the affidavits of three City councilors—Patti Bushee, David Coss, and Rebecca Wurzburger—that Petitioners had submitted to the court to supplement the record as evidence that the Council's vote had been influenced by the purportedly incorrect advice from the City attorney. Councilor Wurzburger's affidavit states that she would have presented a summary entitled, *The Coming of Wal-Mart*, at the public hearing had she not been led to believe the Council was prohibited from considering the types of issues the articles raised. The district court granted Respondents' motion to strike the supplemental affidavits. Absent the three affidavits, the only evidence in the record that the City attorney had given the purportedly incorrect advice was Frontera's attorney's reference to it mentioned above. While remarks from Herrera's attorney and Councilor Ortiz also stated that the Council's review was limited to compliance with land use regulations, neither one mentioned the City attorney as having instructed the Council accordingly.

## II.    DISCUSSION

NMSA 1978, Section 3-21-9 (1999) states that "[a] person aggrieved by a decision of the zoning authority or any officer, department, board or bureau of the zoning authority may appeal the decision pursuant to the provisions of [NMSA 1978, Section 39-3-1.1 (1999)]." That section addresses the procedure for appeal to the district court and specifies the nature of the district court's review.

> In a proceeding for judicial review of a final decision by an agency, the district court may set aside, reverse or remand the final decision if it determines that:
>
> (1)    the agency acted fraudulently, arbitrarily or capriciously;
> (2)    the final decision was not supported by substantial evidence; or
> (3)    the agency did not act in accordance with law.

Section 39-3-1.1(D); *see* Rule 1-074(Q). Section 39-3-1.1(E) specifies that the district court's decision is reviewable in the discretion of this Court upon petition for certiorari.

This Court applies the same standard of review applied by the district court. *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806 (filed 2002). "A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *Id.* "Generally, courts should not attempt to supply a

reasoned basis for an agency's decision, but may uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Archuleta v. Santa Fe Police Dep't*, 2005-NMSC-006, ¶ 17, 137 N.M. 161, 108 P.3d 1019 (internal quotation marks and citation omitted). "[I]n resolving ambiguities in the statute or regulations which an agency is charged with administering, the Court generally will defer to the agency's interpretation if it implicates agency expertise." *Rio Grande Chapter*, 2003-NMSC-005, ¶ 17 (internal quotation marks and citation omitted). We will not, however, defer to an agency's or the district court's interpretation of an ordinance as that is a matter we review de novo. *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105.

**A.      Affidavits**

Petitioners argue that the district court erred in refusing to allow the affidavits of the three City councilors to supplement the record. They argue that the affidavits were needed to establish that the City attorney had, in fact, given the instruction before the public hearing commenced, and because some of the Council assert that they considered the instruction in their deliberations, the record should include the affidavits as evidence that the instruction occurred.

The parties agree that this appeal is guided by Rule 1-074. A record on appeal from an administrative agency consists, in pertinent part, of "all papers and pleadings

filed in the proceedings of the agency . . . [and a] transcript of the proceedings." Rule 1-074(H). Corrections to the record may be made "[i]f anything material . . . is omitted from the record on appeal by error or accident, the parties by stipulation, or the agency on request, or the district court, on proper suggestion or on its own initiative, may direct that the omission be corrected and a supplemental record transmitted to the district court. Rule 1-074(I); *see Martinez v. N.M. State Eng'r Office*, 2000-NMCA-074, ¶ 48, 129 N.M. 413, 9 P.3d 657 (stating that only material that was in fact presented below, but was mistakenly or inadvertently omitted from the record, may be included in a supplemental record). Additionally, a record that is inadequate may be remanded to an administrative body for the purpose of creating a record that is adequate for review. *Lewis v. City of Santa Fe*, 2005-NMCA-032, ¶ 20, 137 N.M. 152, 108 P.3d 558.

We primarily note that the affidavits themselves were not papers or pleadings filed in the proceedings that were considered by the Council, but were documents created for the purpose of appeal. *See* Rule 1-074(H). Petitioners argue that the instruction by the City attorney was considered by the Council and should be viewed as part of the proceedings. They further argue that the instruction was inadequately represented in the record, and citing *Lewis*, they suggest that the case be remanded to the Council, so that an adequate record may be made.

We need not decide whether an instruction by the City attorney before the public hearing began was part of the proceeding to determine that the record should not be supplemented by the affidavits. In *Lewis*, the Council denied Wal-Mart's application to build a gas station at its Sam's Club location. 2005-NMCA-032, ¶ 2. Wal-Mart appealed to district court, upon which the City then settled the matter by approving the station subject to certain conditions. *Id.* ¶ 3. The petitioner in *Lewis* appealed, citing the absence of further opportunity for public comment following the Council's reversal of its earlier rejection of the application. *Id.* The district court dismissed both Wal-Mart's and the petitioner's appeals. *Id.* ¶¶ 4-5. The petitioner appealed to this Court. *Id.* ¶ 5. The City and Wal-Mart argued that the record was inadequate for an appeal pursuant to Rule 1-074. *Lewis*, 2005-NMCA-032, ¶ 20. This Court stated that "the district court is at liberty to remand for the purpose of creating a record that is adequate for review." *Id.* In *Lewis*, the possibility of an inadequate record arose because the City's discussions in reaching the settlement had occurred in an executive (non-public) session and represented a complete change in position. *Id.* ¶ 3, 20. Unlike in *Lewis*, in the present case, an extensive record exists and includes mention of the basis for the appeal—the purported limitation on the Council's scope of review. The record is sufficient to consider whether the Council

11

acted fraudently, arbitrarily, or capriciously, without substantial evidence or not in accordance with the law. *See id.*

There are strong policy considerations behind the rules for limiting supplementation of a record on appeal. In *Swisher v. Darden*, 59 N.M. 511, 515-16, 287 P.2d 73, 76 (1955), *superseded by statute on other grounds as stated in Sanchez v. Board of Education*, 80 N.M. 286, 454 P.2d 768 (1969), our Supreme Court noted that, in the absence of a statute, "review is limited to the record made in the administrative proceeding, and the courts [should] decline to hear new . . . evidence . . . especially where the evidence was available and could have been introduced in the administrative tribunal. To allow [otherwise] would [be to] substitute the court for the administrative tribunal." *Swisher*, 59 N.M. at 515-16, 287 P.2d at 77-76 (internal quotation marks and citation omitted).

Because neither party is arguing whether the instruction from the City attorney occurred, and evidence of the instruction exists in the record, we see little need in supplementing the record with affidavits to prove that the event happened. The references in the minutes are sufficient for Petitioners to raise the argument that the City attorney advised the Council to limit its scope of review, and for a court to review the Council's action.

12

**B.      Arbitrary and Capricious Decision**

Petitioners next argue that the instruction by the City attorney to the Council was a command that limited their scope of review, thus rendering the Council's action of approving the development arbitrary and capricious. Thus, they seem to argue that the purported incorrect advice may have caused councilors to vote differently than they otherwise would have had the instruction not occurred. However, Petitioners do not argue that the Council failed to consider issues that it was legally obligated to consider under Ordinance No. 14-1994. Instead, they argue that three of the eight councilors incorrectly believed they were prohibited from considering matters that they had discretion to consider.

Because we conclude that it is speculative that the Council did not consider issues other than land use, we need not address whether it would have been arbitrary and capricious had the Council only considered land use issues. After hours of testimony from citizens in favor of the commercial development, Councilor Ortiz made remarks at the August 15 hearing that demonstrate considerations other than land use. He stated: "I believe Wal-Mart is a bad corporation. I believe they're bad to their employees. I think they're bad to the environment. They're bad to this country. But my constituents want their cheap gas, so I have to vote yes." Councilor Lopez expressed concern that Wal-Mart would abandon its other location in Santa Fe

13

and leave the property vacant if the new Wal-Mart was approved. Councilor Heldmeyer asked if the other buildings in the project would be franchises or independent businesses. Mayor Delgado stated that approval of the project would let it be known to residents in the area that "[f]inally[,] we're going to recognize what your needs are out there. Finally[,] we're going to give you a place to shop." Councilor Chavez moved for approval subject to conditions, one of which was that Wal-Mart should pay the living wage. Five weeks later at the hearing on traffic planning for the development, Councilor Ortiz stated:

> I believe that the corporate philosophy of Wal-Mart that it has practiced over the last twenty years has been to the detriment of the communities they have been involved with and to the detriment of our country. The more things that they import from China, the more small businesses that they push out of towns, the worse it is for our country. I also believe that their employee policy has much to be desired. However, here in Santa Fe we've got an economic and income divide, and those people I represent and have listened to on this issue by an overwhelming basis want to have the ability to get goods and services and even gas cheaper than at other places.

Councilor Chavez stated that there were people in Santa Fe who could not afford to support small businesses and others with discretionary spending that would find themselves going to places like Sam's Club or Wal-Mart. Mayor Delgado stated in casting his vote that the southwest part of town continued to grow, and people there needed more services.

In light of the record, we are not convinced that the Council took the City attorney's advice and limited its scope of review to land development code issues. The record reveals reasonable and rational consideration of the project by those who voted for it. Had the three affidavits not been stricken, they would have tended to show that at least some of the councilors believed their review was limited. However, there is nothing in the record affirmatively tending to show that any of the pro-development councilors either believed their review was limited or would have voted against the development had they so believed. Moreover, we note that it would appear that the three councilors, whose affidavits are at issue, apparently considered matters other than compliance with the land regulations, as there was little indication that the development did not satisfy the regulations. We therefore hold that there is no affirmative showing of prejudice by Petitioners. The record does not indicate that anyone speaking about the development was restricted from expressing their views and, therefore, there is no indication that there was not full discussion. The record does suggest that a majority of councilors considered matters beyond the land development code. "[A]n assertion of prejudice is not a showing of prejudice." *In re Stein*, 2008-NMSC-013, ¶ 44, 143 N.M. 462, 177 P.3d 513.

## C. Due Process

Finally, Petitioners claim that the public was not given adequate notice of the scope of the hearing, thus resulting in a denial of their due process rights. We note two points. First, as stated above, the Council did appear to have taken issues other than compliance with the land development code into consideration in voting for the development. Second, after Herrera's attorney spoke about the scope of the Council's review being limited to the land development code, a member of the public speaking against the project stated that the Council had broad discretion to deny development applications that are not in the public interest even if they meet all conditions established under zoning regulations. Ouida MacGregor, a former Council member, referenced the earlier project of the proposed boutique hospital in Santa Fe, and the decision by the Council not to consider the potential adverse economic impacts of the project. In explaining why she thought the current project was undesirable for the city, she stated: "You, as a Council, have the legal and constitutional right and responsibility to look at the overall impact of this project on the city."

When members of the public began speaking in favor of the development project, Frontera's attorney reiterated that this was a land use case, and the Council could not "consider the alleged negative economic impact on other businesses." Given the facts in the record, it would appear that members of the public spoke their

16

minds about issues beyond the land development code, and members of the Council voted based on issues outside that scope as well.

## III. CONCLUSION

The district court correctly struck the three councilors' affidavits on the basis that Rule 1-074 provides no mechanism for adding this type of evidence to an administrative record. Given the extensive record, including the citizens' testimony on both sides of a broad range of issues, and given indications that the councilors did not entirely limit their review as advised, the Council's decision was not arbitrary and capricious, and is affirmed.

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**JONATHAN B. SUTIN, Judge**